## Case No. 4,382.

ELLERMAN v. NEW ORLEANS, ETC.,
R. CO. et al.

[2 Woods, 120.][1]

Circuit Court, D. Louisiana. Nov. Term, 1875.[2]

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
[2] [Reversed in 105 U. S. 166.]

John A. Campbell, for the motion.
W. W. King, contra.

WOODS, Circuit Judge. The counsel for Ellerman, the plaintiff, as one reason why this court should not dissolve the injunction issued by the state court, says 'that the case has not been in fact removed to this court, and therefore we are without jurisdiction to entertain the motion. This preliminary question must therefore be first disposed of.

The first reason assigned by counsel for plaintiff why the case is not properly before this court is, because an order for removal was necessary to be made by the state court, and being made, was superseded by the suspensive appeal to the supreme court of the state. There is nothing in the acts of congress of the United States on the subject of the removal of suits from the state courts to the United States courts, to give support to the idea that the United States court is dependent upon the state supreme court for a judgment or an opinion on the order of removal. The presentation of a proper petition and bond is, by the acts of congress, as well as by the decisions of the supreme court of the United States, effectual to suspend all the powers of the state court in which the suit is. The acts of congress have no reference to the appellate court. Under the act of 1789 (1 Stat. 79, § 12), the application to remove was to be made at the appearance term; by the act of March 3, 1875 (18 Stat. 470, § 3), the application may be made at the term at which the cause could be first tried, and before trial. The state court is required to proceed no further when the affidavit and bond have been made and filed. The allowance of an appeal is not a compliance with the act of congress. It is true, a number of the state courts have adopted a different rule. State v. Judge, 23 La. Ann. 29; Bryant v. Rich, 106 Mass. 180; Whiton v. Chicago & N. W. Ry. Co., 25 Wis. 424; Darst v. Bates, 51 Ill. 439. But in considering the cases in the reports of the supreme court of the United States, I am unable to find anything to support the practice. In the case of Insurance Co. v. Dunn, 19 Wall. [86 U. S.] 214, it was held that after petition had been filed and bond given for the removal of a cause to the federal court, no power of action thereafter remained to the state court, and that every question necessarily including that of its own jurisdiction must be decided in the federal court. In a still later case the same court says that "the suitor making the application has an unqualified and unrestrained right to a removal, on complying with the requirements of the act of congress." Insurance Co. v. Morse, 20 Wall. [87 U. S.] 445. See, also, Kanouse v. Martin, 15 How. [56 U. S.] 198; Gordon v. Longest, 16 Pet. [41 U. S.] 97. The New York courts have decided that an

appeal does not lie to an order of removal from the inferior to the superior courts of the state. Stevens v. Phoenix Ins. Co., 41 N. Y. 149; Bell v. Dix, 49 N. Y. 232. See, also, Matthews v. Lyall [Case No. 9,285]. It is probable that the practice of allowing an appeal arose out of the silence of the statutes in respect to the method of making a removal and of enforcing the order. The early acts provided: 1st, for an affidavit from the applicant, showing his right to remove; 2d, a bond to secure a return of the record to the court of the United States. This being done, the statute declared the effect. This was that the state court should proceed no further. One would suppose this was clear enough, but it was not. The act of March, 1875 (18 Stat. 470), is more explicit: 1st, the same affidavit is required; 2d, the condition of the bond is materially enlarged; it provides for the payment of costs and damages in case the suit is improperly removed; 3d, it gives a power to the circuit court to remand the case, which resulted before only by construction; 4th, it compels the clerk of the court to furnish a copy of the record, by a penal section in the act (section 7); 5th, it empowers the circuit court to send a certiorari to the state court to obtain it (section 7). The writ of certiorari is a very ancient writ of the common law. In the Natura Brevium it is described as the writ whereby to remove records out of one court to another. Fitzh. Nat. Brev. 554, A; 2 Comyn, Dig. tit. "Certiorari," 332. The mandatory part of the writ is: "We command you that you send the record and proceedings aforesaid, with all things touching them, to us under your seal, distinctly and openly, and this writ, so that having inspected the record and proceedings, we may cause further to be done thereupon," etc. Clearly, an appeal to the state supreme court would be no proper return to this writ, nor stay action in this court. The case of Insurance Co. v. Morse, supra, establishes this. The fact that the railroad company was required to keep an agent in this state, upon whom process might be served, does not prevent a removal of the case to this court. Morton v. Mutual Life Ins. Co., 105 Mass. 141. I am therefore of opinion that the suspensive appeal taken from the order of removal was not effectual to prevent the removal of the case to this court.

The next reason given why the cause has not been effectually removed is, because this court has not jurisdiction over the necessary parties. This idea is based on what is called the call in warranty, by Witherspoon and Roberts on Morgan and Raynor. Witherspoon and Roberts are citizens of Louisiana, and, as according to the law of Louisiana (Acts 1868, p. 28, c. 12, § 1), the trial of the case as against Morgan and Raynor, the persons called in warranty, cannot be separated from the trial against Witherspoon and Roberts, it is claimed that the jurisdiction of this court is ousted—in other words, that Witherspoon and Roberts are parties to the controversy in this court, and, being citizens of the same state as plaintiff, the court is without jurisdiction. It is a sufficient reply to this to refer to the act of March 3, 1875, § 2, supra, which declares that "when, in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants, actually interested in such controversy, may remove said suit into the circuit court of the United States for the proper district." This case falls within this provision of the statute, and the law of the United States, and not of the state of Louisiana, must control. This court may try the case as between Ellerman, plaintiff, on the one hand, and Morgan and Raynor and the railroad company, on the other, and leave the state court to take such action as it may be advised as to the case between Ellerman, and Witherspoon and Roberts.

I am therefore of opinion that the case is properly on the docket of this court, and that the court has jurisdiction thereof.

The merits of the motion to dissolve the injunction next require attention. This turns upon the joint resolution of the legislature of March 6, 1869, heretofore referred to. See Acts 1869, p. 67. If the railroad company, or those claiming under it, have the right to collect wharfage, it is by virtue of that joint resolution, and not otherwise. In the case of City of New Orleans v. New Orleans, M. & C. R. Co. [27 La. Ann. 414], this joint resolution was considered by the supreme court of this state. The suit was brought to recover the sum of $764, for wharf dues charged by the city against the railroad company for the barges and flats of the company lying at the wharves referred to in the joint resolution. The defense was, that under the joint resolution, the railroad company was exempt from the payment of wharfage dues for barges, etc., which landed at said wharf. To this the city replied, that the joint resolution was unconstitutional, among other reasons, because the legislature transcended legislative powers in passing said resolution, donating public revenues to a private purpose. In passing upon this objection to the joint resolution, the supreme court of this state says [supra]: "The grant was not a donation of public revenue to a private purpose. The grant is a license to a railroad company to use its property on the river bank for public purposes; to wit, to facilitate the transaction of its business with the public. It was the control by the legislature of a public servitude." This construction of the resolution is inconsistent with the idea that the right was granted to it by the railroad company to charge wharfage dues against vessels landing at said wharf, which were in no way connected with

the business of the railroad company, or that the railroad company might maintain a free wharf for such vessels. The railroad company owned the banks of the river at the place where the wharves in question are, subject to the public servitude. The legislature granted the company the right to inclose this strip of land along the river bank, and use it, in the language of the supreme court, "for public purposes; to wit, to facilitate the transaction of its business with the public." Under this grant, the railroad company claims the right to use the wharves precisely as if they were the private property of a private person, and to collect wharfage from all water craft using them, whether they have any connection with the business of the railroad company or not. This construction of the grant is clearly opposed to the views of the supreme court of the state. Those views are binding on this court, and, in accordance with them, I must hold that the injunction in this case rightfully issued, and the motion to dissolve it must be overruled.