## RAILROAD COMPANY *v.* ELLERMAN.

1. By its charter and the statutes of Louisiana the city of New Orleans was authorized to erect and maintain wharves within its limits, and to collect wharfage. *Held*, that no right of the city was infringed by a subsequent enactment of the General Assembly of that State granting to a railroad company the authority to enclose and occupy for its purposes and uses a specifically described portion of the levee and batture, and maintain the wharf it theretofore erected on its property within those limits, and exempting it from the supervision and control which the municipal authorities exercise in the matter of public wharves.
2. The question as to whether the company, in constructing, pursuant to such authority, the wharf on its property, and collecting wharfage, acted *ultra vires*, cannot be raised by a claimant under the city who is not a stockholder, and whose rights have not been infringed.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. John S. Cadwalader* and *Mr. Thomas L. Bayne* for the appellants.

*Mr. Charles N. Hornor* for the appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The New Orleans, Mobile, and Texas Railroad Company, one of the appellants, and the principal defendant below, is a corporation of the State of Alabama, by the original name of the New Orleans, Mobile, and Chattanooga Railroad Company, which has constructed a line of railroad from Mobile to New

Orleans. It was authorized by its charter " to obtain by purchase or grant from any person or corporation, and afterwards maintain, manage, use, and enjoy, any railroad property, and the appurtenances thereto, or any steamboats, piers, wharves, and the appurtenances thereto, that the directors may deem necessary, profitable, and convenient for the corporation to own, use, and manage in connection with its railroads." Session Acts of Alabama, 1866.

The General Assembly of Louisiana, on Aug. 16, 1868, passed an act which recognized the company as a body corporate, and authorized it to exercise its franchises in Louisiana, and expressly conferred upon it power " to construct, establish, or purchase in the State of Louisiana, and thereafter to own, maintain, and use, suitable wharves, piers, warehouses, steamboats, harbors, depots, stations, and other works and appurtenances connected with and incidental to said railroad and the business of said company, and by the directors of said company deemed necessary and expedient for said company to own and manage."

In 1869 that State further enacted " that the said company, with the consent of the owners of lands fronting on any navigable watercourse, or after such lands have been acquired by the company by purchase, release, donation, or in any other manner, in accordance with the laws of the State of Louisiana, may erect, construct, and thereafter maintain and use wharves, warehouses, depots, or other buildings and structures in and upon the margins, or upon that portion of the margins reserved to public use, of any and all navigable rivers, bayous, or watercourses in the State of Louisiana, wherever the same may be deemed, by a majority of the directors of the company, necessary and requisite for the legitimate and convenient transaction of the business of the company."

On March 6, 1869, the General Assembly of Louisiana passed a joint resolution, having the force of law, granting to the company " the right to enclose and occupy for its purposes and uses, in such manner as the directors of said company may determine, that portion of the levee, batture, and wharf in the city of New Orleans, between the street laid out between Pilie Street and the Mississippi River, and from Calliope Street to

the lower line (about three hundred and fifty-five feet below Calliope Street) of the batture rights owned by said company, and no steamship or other vessel shall occupy or lie at said wharf, or receive or discharge cargo thereat, except by and with the consent of said company; and all steamships or vessels discharging or receiving cargo at said wharf for said company, or any steamships or vessels using said wharf, by and with the consent of said company, and not receiving or discharging cargo at or occupying any other wharf in the city of New Orleans, shall be exempt from payment of all levee and wharf dues to the city of New Orleans. Said wharf shall be maintained and kept in repair by said company." All laws and parts of laws, and all ordinances and parts of ordinances, conflicting with the provisions of the joint resolution were thereby repealed.

At the date of the passage of the joint resolution the company was the owner by previous purchase of the land described in it, and in possession, using it for the purposes of a depot and for other railroad purposes, and as a wharf, appropriate structures having been built for that use. A portion of this property was leased in June, 1875, by the receivers of the railroad, appointed under proceedings to foreclose, for twelve months, at the sum of $7,200, to Roberts and Witherspoon, who were made defendants to the bill, the use and employment of the wharf granted by such lease consisting "in the mooring of vessels coming to the consignment, custody, or care of the parties of the second part (the lessees) or to either of them, and the loading and unloading of cargoes upon all vessels of this kind with the full consent of the parties of the first part, exempt from wharf and levee dues, according to the terms of the said resolution."

The object of the bill filed by Ellerman, the appellee, was to enjoin the execution of this contract, and the use and employment of the wharf described therein in the manner contemplated by it. His claim is based on a contract between himself and the city of New Orleans, entered into June 29, 1875. It purports to be a grant from the city to him, for a term of four years and eleven months from the date of the contract for building and repairing the wharves and levees

according to certain specifications on file, and for the payment of debts contracted on account of them, and for transferring the revenues of the same for the said term, agreeably to the terms of a certain ordinance and resolution of the city, all which are set out in the contract. The specifications state the particulars of the required repairs and extensions of the wharves. The subject-matter of the ordinance is declared to be the sale of " the revenues of the wharves and levees of the city of New Orleans, collectible under existing ordinances upon all ships, vessels, steamships, steamboats, flatboats, and water-craft of any and every description, upon the terms and conditions " therein set forth. The purchaser was to assume certain specified liabilities of the city, connected with the wharves, and it was provided that the sale should be awarded to the bidder who would assume to discharge the obligations set forth, in consideration of the transfer of the revenues assigned, in the shortest time. The purchaser should be subrogated to all the rights and privileges of the city, to sue for and collect the revenues ; and it was understood and agreed that " the city only undertakes to transfer only such rights as she possesses, and the purchaser takes the said revenues subject to all the rights now held by other persons by way of lease, privilege, contract, or by law, and the purchaser shall, in reference to them, be subrogated only to the rights of the city." It was provided that the purchaser should take possession of the wharves, landings, and levees in the condition in which the same might be at the time, and should repair the same and keep them in good order and condition during the term stipulated. It was further provided that if, from overpowering force, the city should not be able to protect the transferee in receiving the said revenues, or if they should by any such cause be diminished over one-third, the transferee might, after satisfying all obligations incurred under the contract up to the time, surrender it and be discharged from further responsibility ; but the city, it was expressly declared, in nowise guaranteed the payment of the wharfage and levee dues, the collection of which is to be enforced by the transferee at his own cost.

The wharves and levees which constitute the subject-matte.

of this arrangement consisted of artificial improvements made at the expense of the city, by grading, and by driving piles which are securely fastened, and covered by a plank flooring, so as to furnish safe and convenient landings and moorings for water-craft, and places for loading and unloading their cargoes. Provision was made not only for keeping in repair the existing works and structures, but the transferee of the revenues was bound to build additional new wharves in certain specified districts of the city, if required to do so, not to exceed a named sum per annum; but if new wharves should be required in other districts by the city council at their own or the request of any other person, the party so desiring them should be bound to pay for the cost thereof, and should be entitled to receive the revenues derived from such wharves during the term of contract with the transferee, unless sooner reimbursed.

The claim of Ellerman is, that the administration of the wharves and levees within the city limits is intrusted by law to the municipal government; that with this administration is coupled a franchise, that the city may charge and receive a reasonable remuneration for the expense of the facilities afforded to commerce; that under this franchise the city expended out of its revenues very large sums on the wharves and levees in permanent works and improvements for the benefit of commerce; that, in consequence, it had a vested right in the franchise and the revenues legitimately derived from these expenditures, of which it could not be divested by an act of the legislature, and that he, by virtue of his contract, is subrogated during its term to the rights of the city.

He further claims that it is a violation of these rights for the defendants to permit the use and employment of their property as a wharf, and to charge and receive wharfage for such use, by and from persons not engaged in conducting the proper business of the company, thus opening a rival wharf business in competition with the city, and him as its lessee; and that if the joint resolution of March 6, 1869, must be construed so as to confer upon the company any such authority, it is null and void, because contrary to that provision of the Constitution of the United States which forbids the taking of private property without due process of law

It is not claimed that the city has ever used as a public wharf the premises so occupied by the appellants, or made any expenditures for works and constructions upon them; and it is admitted that all expenditures of that description which have been made thereon have been at the cost of the railroad company.

A decree was rendered in the Circuit Court in favor of the appellee, granting the relief prayed for, to review which this appeal is prosecuted.

In the opinion of the circuit judge (2 Woods, 120), the case turned upon the construction to be given to the joint resolution of March 6, 1869; and being of opinion, upon the authority of the decision of the Supreme Court of Louisiana in *City of New Orleans* v. *New Orleans, Mobile, & Chattanooga Railroad Co.* (27 La. Ann. 414), that this resolution conferred upon the railroad company no right to charge wharfage dues against vessels landing at said wharf which were in no way connected with the business of the railroad company, and no right to maintain a free wharf for such vessels, it was assumed that the appellee had such an interest in the question as qualified him to maintain this suit and entitled him to the relief prayed for.

*City of New Orleans* v. *New Orleans, Mobile, & Chattanooga Railroad Co.* (*supra*) was a suit brought against the company to recover a sum of money for levee dues charged against the defendant for barges and flatboats belonging to it which were lying at this wharf, and used in its business. The Supreme Court of the State, in that case, decided that the joint resolution was not void for either of the reasons urged. It said: "The public servitude along the banks of rivers in Louisiana is under the control of the General Assembly. C. C. 453, 455, 458. The right of the General Assembly to grant the right to corporations or individuals to make and maintain wharves has been long settled. 5 Ann. 661; 15 id. 577; 22 id. 545; 6 N. Y. 523; 26 id. 287. In the case now under consideration the State granted the right to the riparian owner. This is permissible. 1 Black, 1. Nor was the grant a donation of public revenues to a private purpose. The grant is a license to a railroad company to use its property on the river bank

for public purposes, to wit, to facilitate the transaction of its business with the public. It was the control by the legislature of a public servitude."

The extent of the rights of the company under the joint resolution — whether the use of the wharf was limited to railroad purposes merely, or embraced all purposes — was a point not involved in that case, nor decided either in express terms or by any fair inference. What that decision did affirm, however, was, that the disposal of the public right in the premises, as a wharf, was in the State, to the exclusion of the city, so that if the joint resolution had been a cession to a natural person, as riparian proprietor, to improve the premises as a landing-place for water-craft, and for loading and unloading cargoes, by building levees and wharves, at his own expense, with the right to charge reasonable wharfage for their use, it would have been conclusive upon the city and those claiming in its right. And construing the grant to the company as limiting the use of the property as a wharf, to purposes strictly incident to its corporate business, still, in order that it should be beneficial to that extent, it would be essential that the company should have the right to exclude all other uses; and this would effectually withdraw it from the jurisdiction of the city authority over the general subject of the public wharves.

Neither would this be in derogation of any vested right of the city. Whatever powers the municipal body rightfully enjoys over the subject is derived from the legislature. They are merely administrative and may be revoked at any time, not touching, of course, any property of the city actually acquired in the course of administration. The sole ground of the right of the city to collect wharfage at all is that it is a reasonable compensation, which it is allowed by law to charge for the actual use of structures provided at its expense for the convenience of vessels engaged in the navigation of the river. *Cannon* v. *New Orleans*, 20 Wall. 577.

And while it may be true, as was decided by the Supreme Court of Louisiana in *Ellerman* v. *McMains* (30 La. Ann., pt. 1, 190), that the city cannot lawfully be required to permit the use of its wharves, without compensation, on the ground that they

are private property; it is equally true, as decided by the same court in *City of New Orleans* v. *Wilmot* (31 La. Ann. 65), that the city cannot forbid any water-craft from using the banks of the navigable waters of the State for purposes of navigation and commerce, and cannot compel them to pay to it wharfage except for the use of wharves of which it is the proprietor.

The rights of the city in respect to this controversy would seem, then, to be reduced to that of building levees and wharves on the banks of the river within its corporate limits for the public utility, with the exceptions established by paramount law, and collecting reasonable wharfage for the actual use of such structures. Its right to build a wharf upon the land of the company is, we have seen, excluded by the terms of the joint resolution of March 6, 1869, according to its narrowest construction.

The sole remaining question then, is, whether Ellerman, as assignee of the city, has any legal interest which entitles him to enjoin the company from using its wharf as a public wharf beyond the limits of such use, as defined by that construction of the joint resolution. If he has such interest, it can only consist in preventing competition with himself as a wharfinger, which such more extensive use of the railroad property would create. And if the right to assert it exists, it must rest, not upon the claim that the premises are thus used for purposes to which they might not be lawfully devoted if owned and used by a natural person, but on the allegation merely that such use is beyond the corporate powers of the company. But if the competition in itself, however injurious, is not a wrong of which he could complain against a natural person, being the riparian proprietor, how does it become so merely because the author of it is a corporation acting *ultra vires?* The damage is attributable to the competition, and to that alone. But the competition is not illegal. It is not unlawful for any one to compete with the company, although the latter may not be authorized to engage in the same business. The legal interest which qualifies a complainant other than the State itself to sue in such a case is a pecuniary interest in preventing the defendant from doing an act where the injury alleged flows from its quality and

character as a breach of some legal or equitable duty. A stockholder of the company has such an interest in restraining it within the limits of the enterprise for which it was formed, because that is to enforce his contract of membership. The State has a legal interest in preventing the usurpation and perversion of its franchises, because it is a trustee of its powers for uses strictly public. In these questions the appellee has no interest, and he cannot raise them in order, under that cover, to create and protect a monopoly which the law does not give him. The only injury of which he can be heard in a judicial tribunal to complain is the invasion of some legal or equitable right. If he asserts that the competition of the rail-road company damages him, the answer is, that it does not abridge or impair any such right. If he alleges that the rail-road company is acting beyond the warrant of the law, the answer is, that a violation of its charter does not of itself injuriously affect any of his rights. The company is not shown to owe him any duty which it has not performed.

This was the principle on which this court proceeded in the case of *City of Georgetown* v. *Alexandria Canal Co.*, 12 Pet. 91. It is applied in *Mayor, &c. of Liverpool* v. *Chorley Water-works Co.*, 2 De G., M. & G. 852; *Stockport District Water-works* v. *Mayor, &c. of Manchester*, 9 Jur. N. s. 266; *Pudsey Coal Gas Co.* v. *Corporation of Bradford*, Law Rep. 15 Eq. 167.

On this ground it is our opinion that the appellee failed to allege and show any right to maintain his bill, which should, therefore, have been dismissed. The decree will be accordingly reversed, with directions to dismiss the bill; and it is

*So ordered.*

Mr. Justice Woods dissented.