174 So. 259

**FOURNET v. DE VILBISS et al.**

No. 34252.

March 29, 1937.

Rehearing Denied April 26, 1937.

193 194

S. W. Plauche and J. E. Bass, both of Lake Charles, for appellant.

Pujo, Hardin & Porter, of Lake Charles, for appellees.

O'NIELL, Chief Justice.

The plaintiff has appealed from an order removing his case to the federal court, at the instance of one of the defendants, on the ground of diverse citizenship. The plaintiff is a resident and citizen of Louisiana, and alleges that the three defendants, namely, Jesse W. De Vilbiss and his two sons, Roy De Vilbiss and Herbert De Vilbiss, are citizens of Louisiana, residing in the parish of Jefferson Davis, in this state. Jesse W. De Vilbiss, claiming to be a resident and citizen of California, obtained the order removing the case to the District Court of the United States for the Western District of Louisiana. He made

the allegation, required by U.S.C.A., title 28, § 71 (Judicial Code, § 28, as amended), "that there is in this suit a controversy which is wholly between citizens of different states, and which can be fully determined between them, that is, a suit between John B. Fournet, a citizen of the State of Louisiana, and defendant, Jesse W. De Vilbiss, a citizen of the State of California."

The question presented by the appeal is whether there is in this suit, according to the allegations of the plaintiff's petition, a controversy which is wholly between the plaintiff and Jesse W. De Vilbiss, and which can be fully determined as between them. Although, as this court said in Franciscus v. Surget, 6 Rob. 33, the matter must be decided finally by the federal court and is not to be affected by the decision of the state court, rendered on appeal, nevertheless it has been decided many times and consistently by this court that a plaintiff has the right to appeal from an order removing his case to the federal court. It was so decided in the following cases: Louisiana State Bank v. Morgan, Dorsey & Co., 4 Mart.(N.S.) 344; Fitz's Syndic v. Hayden, 4 Mart.(N.S.) 653; Fisk v. Fisk, 4 Mart. (N.S.) 676; Stoker v. Leavenworth, 7 La. 390; State ex rel. Coons v. Judge of Thirteenth Judicial Dist., 23 La.Ann. 29, 8 Am. Rep. 583; Goodrich v. Hunton, 29 La.Ann. 372; Tunstall v. Parish of Madison, 30 La. Ann. 471; Meaux v. Pittman, 32 La.Ann. 405; Johnson v. New Orleans National Banking Ass'n, 33 La.Ann. 479; New Orleans City Railroad Co. v. Crescent City Railroad Co., 33 La.Ann. 1273, 1277; City

of New Orleans v. Seixas, 35 La.Ann. 36; Ralston v. British & American Mortgage Co., 37 La.Ann. 193; Sachse v. Citizens' Bank, 37 La.Ann. 364; and Guinault v. Louisville & N. Railroad Co., 41 La.Ann. 571, 6 So. 850. The right to an appeal in such a case was recognized also in the following cases, where it was held that there was no right of appeal from an order of the state court refusing to order the removal of a case to the federal court, viz.: Higgins v. McMicken, 6 Mart.(N.S.) 711; Rosenfield v. Adams Express Co., 21 La. Ann. 233; and Succession of Bodenheimer, 35 La.Ann. 1033. In the case of Ellerman v. New Orleans, Mobile & Texas Railroad Co., Fed.Cas. No. 4,382, 2 Woods, 120, it was said by the United States Circuit Court for the Fifth Circuit that the allowing of an appeal by the state court in such a case was "not a compliance with the act of Congress." But the court conceded that the right of appeal in such cases was recognized by the highest court of other states besides Louisiana, as, for example, in Bryant v. Rich, 106 Mass. 180, 8 Am.Rep. 311; Whiton v. Chicago & N. W. Ry. Co., 25 Wis. 424, 3 Am.Rep. 101; and Darst v. Bates, 51 Ill. 439. At this time the right to appeal to a higher state court, from an order removing a case to the federal court, is by far the majority rule. U.S.C.A., title 28, Notes of Decisions, section 72, chapter 3, paragraph 347, p. 511. In some of the decisions by this court an order of removal has been compared with the dismissal of a suit for want of jurisdiction. The reason given by some courts for recognizing the right to appeal from such an order is that the federal courts, in passing upon the question

whether the character of the plaintiff's cause of action is joint, or joint and several, or several, will be governed by the local law. Longdorf's Cyclopedia of Federal Procedure, vol. 1, chap. 3, subdiv. 5, § 228. Whatever the reason may be, the right of a plaintiff to appeal to a higher state court, from an order removing his case to the federal court, is too well settled by the rulings of our predecessors to be reconsidered now.

The question whether there is in this suit a separate and distinct controversy between the plaintiff and Jesse W. De Vilbiss—that is to say, a controversy which is wholly between them and which can be fully determined as between them—must be determined by the allegations of the plaintiff's petition, as far as this court is concerned. Winchester v. Loud, 108 U.S. 130, 131, 2 S.Ct. 311, 27 L.Ed. 677, 678. It is conceded that the plaintiff and two of the defendants, Roy De Vilbiss and Herbert De Vilbiss, are residents and citizens of Louisiana. We assume, for the purpose of deciding the question tendered on this appeal, that Jesse W. De Vilbiss is a resident and citizen of California. The suit is to recover a fee, valued by the plaintiff at $50,000, for services alleged to have been rendered by him, as an attorney at law, under an alleged verbal contract with Herbert De Vilbiss, acting for himself and as the agent for his father and brother. The plaintiff alleges that Jesse W. De Vilbiss owns a tract of land described as the S. ½ of section 11, in township 9 south, range 4 west, and that Jesse W. De Vilbiss and his two sons own jointly—each owning a third interest in—

the adjacent tract on the south, being the N. ½ of section 14, in the same township and range. The plaintiff alleges that, at the time when he was employed, the land was encumbered with mortgages and vendors' liens, and that the holders of the mortgages and liens were threatening foreclosure proceedings; that the lands were affected also by mineral leases, in which the defendants, respectively, had retained certain royalties; and that the defendants were in danger of losing their royalty interests, as well as their land, by reason of the threatened foreclosures of the mortgages and vendors' liens. The plaintiff avers that, at the time of the alleged employment, the defendants told him that they did not owe the debts which appeared to be secured by the mortgages and vendors' liens, and that they would furnish him sufficient evidence to justify his suing to cancel the mortgages and liens. He avers that he was employed, therefore, to sue to cancel the mortgages and liens if in his judgment the evidence would justify such a suit, and, otherwise, to postpone and ward off the threatened foreclosures until the defendants could sell enough of their royalty interests to pay the debts and cancel the mortgages and liens; that the services to be rendered included also his representing the defendants in negotiations with a certain oil and refining company which was seeking a renewal of its mineral leases; that the compensation which was agreed upon, for the services to be rendered, was that the defendants would convey to him one-fifth of the royalty interests that would remain owned by them, respectively, after the cancellation of the mortgages and liens. The plaintiff avers that,

after a thorough consideration of the facts and the law on the subject, he advised against suing for a cancellation of the mortgages and liens, and agreed to devote his time and attention to postponing and warding off the threatened foreclosures; and that the defendants acquiesced in his pursuing that course. He avers that, in consequence of his postponing and warding off the threatened foreclosures, Jesse W. De Vilbiss eventually sold enough of his royalty interests to pay off the debts secured by the mortgages and liens on all of the land, and to leave each one of the defendants owning a substantial part of his royalty interest in the land. He avers that the royalty interest remaining as the property of Jesse W. De Vilbiss is 51/1600 interest in or affecting certain described parts of the S. ½ of section 11, and 26/1600 interest in or affecting certain other described parts of the same half-section, and 76/1600 interest in or affecting another certain described part of the same half-section, and 63.5/1600 interest in or affecting another certain described part of the same half-section, and 38.5/1600 interest in or affecting the remaining part of the same half-section, and 8.33/1600 interest in or affecting the N. ½ of section 14. The plaintiff avers that the royalty remaining as the property of Herbert De Vilbiss is 8.33/1600 royalty interest in or affecting the N. ½ of section 14; and that the royalty remaining as the property of Roy De Vilbiss is 16.66/1600 royalty interest in or affecting the N. ½ of section 14. It appears, therefore, that each one of the two defendants, Jesse W. De Vilbiss and Herbert De Vilbiss, owns 1/192, and that the other defendant Roy De Vil-

biss owns 1/96, royalty interest in or affecting the south half of the whole tract of land; that Jesse W. De Vilbiss owns also various royalty interests in or affecting the several parts of the north half of the tract; and that neither Herbert nor Roy De Vilbiss has any royalty interest in or affecting the north half of the tract of land. Plaintiff avers that the total value of one-fifth of the royalty interests retained by all of the defendants, at the time when the contract was fulfilled by the cancellation of the mortgages and vendors' liens, was $50,000; and that by performing faithfully and successfully his obligations under the contract he has earned the stipulated fee. He avers that, at times subsequent to his earning the fee of one-fifth of the defendants' royalties, they have collected in money royalties amounting to several thousand dollars, of which he is entitled to an accounting and to one-fifth.

The prayer of the plaintiff's petition is, first, for a judgment commanding the defendants to transfer to him, within a time to be fixed by the court, one-fifth of the royalty interests owned by each of them, and declaring that, in default thereof, the decree shall stand as a transfer of the title to one-fifth of the royalty interests; and, in the alternative, if the contract should be deemed "wholly specifically unenforceable," that the plaintiff shall recover of and from the defendants $50,000, as the value of the one-fifth of their royalty interests, the judgment to be against each defendant in proportion to his royalty interest, and, on the same basis or valuation of $50,000, for any portion of the one-fifth royalty interest as to which the contract may be found not enforceable by specific performance; and, again in the alternative, and in the event that the court should hold that the plaintiff is not entitled to specific performance of the alleged contract, or to its enforcement against the defendants on the basis of the value in money of the one-fifth of their royalty interests, then that plaintiff shall have judgment against the defendants for the quantum meruit, alleged to be $50,000, the judgment to be against each defendant in proportion to his royalty interest. And, finally, plaintiff prays that each one of the defendants shall be ordered to account to him for the royalties received in cash, and be condemned to pay him one-fifth of the amount thereof.

By the plaintiff's alternative demand, or demands, for a money judgment against each of the defendants, in proportion to his royalty interest, the plaintiff is claiming of and from each defendant the proportion of $50,000 which the value of one-fifth of the royalty interest of each defendant bears to the $50,000. It would be impossible to make any other apportionment of the claim of $50,000, among the three defendants in proportion to their royalty interests, because their fractional royalty interests do not all affect the same tract or area of land.

So far as the alternative demand is concerned—for a money judgment for $50,000, to be rendered against each defendant for the proportion which the value of one-fifth of his royalty interest bears to the $50,000— the controversy is not separable, because, if this demand is well founded, each one of the defendants will be as much concerned

with having a high valuation put upon the royalty interest of the other defendants as with having a low valuation put upon his own royalty interest. As far as this demand is concerned, the suit is not one in which there is a controversy which is wholly between the plaintiff and Jesse W. De Vilbiss—citizens of different states—and which can be fully determined as between them.

Even with regard to the primary or principal demand, for specific performance of the alleged contract by the transfer of one-fifth of the royalty interest of each defendant, there is not a separable controversy, because the alleged obligations are joint obligations, arising from only one cause of action, founded upon only one contract, entered into by the defendants for their mutual benefit. The obligation which the plaintiff had to perform was the indivisible obligation to sue to cancel, or else to postpone and ward off the foreclosure of, the mortgages and liens recorded against the land of any and all of the defendants; and the consideration or compensation which he was to receive for the services which he was obliged to render to all of the defendants was one-fifth of all of their royalties. The obligation of the defendants was not a solidary obligation—none of the defendants was bound for the obligation of either of the others—but the obligations of all of them constituted a joint obligation. None of the defendants was to be obliged to transfer the fifth of his royalty interest to the plaintiff unless all of the defendants should become obliged to transfer one-fifth of all of their royalty interests to the plaintiff, in consideration for his having performed his obligation to all of the defendants. Hence the cause of action for specific performance of the contract is a joint cause of action, in the sense that the plaintiff had the right to join all of the other parties to the contract as defendants in one suit. It may be that, if the plaintiff had confined his demand to one for specific performance of the contract, he might have maintained an action against them either separately or jointly. Under the provisions of article 2085 of the Civil Code, in a suit on a joint contract, it was necessary to make all of the obligors defendants; but that law was superseded by Act No. 103 of the Extra Session of 1870, published in the Acts of 1871, p. 18, and being section 1932 of Dart's General Statutes; which declares that in all suits against joint obligors it shall be not necessary to make all of the obligors parties to the suit, and that a judgment may be obtained against any one of the obligors for his part of the debt or obligation, "whether all are joined in the suit or not." Likewise, in article 2086 of the Civil Code it is declared:

"In a suit on a joint obligation, judgment must be rendered against each defendant separately, for his proportion of the debt or damages, if the suit resolves itself into damages. If the suit be for a specific performance, each defendant may be compelled to execute his proportion of the obligation, if the nature of the case permit and justice require it. The proportion, meant by this and the succeding articles, is calculated by the number of the obligors, each one answering for an equal part, unless the parties have expressed a different intention."

■ It is a matter of no importance here that the plaintiff might have sued any one of the defendants separately for specific performance of his obligation under the contract. In determining, in any suit against two or more defendants, whether there is a controversy which is wholly between citizens of different states, and which can be fully determined as between them, in the meaning of U.S.C.A., title 28, § 71 (Judicial Code, § 28, as amended), the question does not depend upon whether the plaintiff might have sued separately the defendant who is a citizen of another state. 54 C.J., title IX, *Separable Controversies,* under the rubric Removal of Causes; Cyclopedia of Federal Procedure, vol. 1, chapter 3, subdivision 5, title "Separable Controversy wholly between Citizens of Different States as Ground or Basis of Removal," §§ 226 and 228; Hughes, Federal Practice, vol. 4, chapter 49, title *Removal of Causes,* Subtitle *Separable Controversies,* section 2374; Louisville & Nashville Railroad Co. v. Ide, 114 U.S. 52, 56, 5 S.Ct. 735, 29 L.Ed. 63, 65; Torrence v. Shedd, 144 U.S. 527, 530, 12 S. Ct. 726, 36 L.Ed. 528, 531.

In 54 C.J., title IX, § 181 B, p. 290, dealing with *Removal of Causes,* under the heading *Separable Controversies,* it is said that a controversy "is not separable where full and complete relief cannot be afforded without the presence of all the parties to the suit." And in the same section authority is cited for the declaration:

"A joint suit upon the same cause against two or more defendants, however, even though they might have been sued separately, is not separable unless the joinder of the parties is not permitted by the state law."

In Longdorf's Cyclopedia of Federal Procedure, vol. 1, chapter 3, subdivision 5, in § 226, it is said:

"In the nature of things, there can not exist a separable controversy where all the defendants are equally interested in the same issue and their rights measurable and determinable by the same rule. And the same is true where the remedy which the plaintiff seeks requires the presence of all the defendants and the settlement, not of one only, but of all branches of the case. * * * It is not to be understood that a controversy is separable merely because the given plaintiff could have prosecuted his cause of action against a defendant seeking to remove without the joinder of any other defendant. The issue brought before the court in cases of alleged separable controversy is not whether the party asking the removal may have a separate decree and a separate execution, but what the whole case shows the controversy to be."

In section 228, in the same volume, it is said:

"The character of plaintiff's cause of action, as joint, joint and several, or several, is of paramount importance on the issue of a separable controversy. In passing upon the matter the federal court will follow the state rule as to whether the cause of action is entire or not, for the question of joint or several liability of defendants is determinable by the local law. If under that law plaintiff is entitled to proceed against defendants on a joint cause of action and does so proceed, there can, in the nature of

things, be no separable controversy justifying a removal of the case from the state court. The controversy under such circumstances is clearly between plaintiff and all the defendants against whom the liability is asserted, and is in no sense separable as to any of the parties thus joined."

In Hughes' Federal Practice, vol. 4, chap. 49, under the title *Removal of Causes,* and the subheading *Separable Controversy,* in § 2367, the conditions essential to a separable controversy are described thus:

"The whole subject-matter of the suit must be capable of being finally determined as between them [the citizens of different States], and complete relief must be afforded as to the separate cause of action, without the presence of the others originally made parties to the suit."

Assuming that the contract alleged to have been entered into by and between the plaintiff and the defendants in this case was of the character described in the plaintiff's petition, it is obvious that the whole subject-matter of the suit could not be finally determined as between the plaintiff and Jesse W. De Vilbiss, so as to afford complete relief to the parties to the suit, on a separate cause of action, without the presence of the two other parties to the alleged contract.

In this connection, the general rules announced by Chief Justice Waite, for the court, in Louisville & Nashville Railroad Co. v. Ide, 114 U.S. 52, at pages 55 and 56, 5 S.Ct. 735, 737, 29 L.Ed. 63, 64, and 65, are very appropriate, viz:

"As we have already said at this term in Ayres v. Wiswall, 112 U.S. [187] 192, 5 S.Ct. 90 [28 L.Ed. 693, 695], 'the rule is now well established that this clause in the section [section 2 of Act of March 3, 1875 (28 U.S.C.A. § 71 note)] refers only to suits where there exists a "separate and distinct cause of action, on which a separate and distinct suit might have been brought and complete relief afforded as to such cause of action, with all the parties on one side of that controversy citizens of different states from those on the other. To say the least, the case must be one capable of separation into parts, so that in one of the parts a controversy will be presented with citizens of one or more states on one side and citizens of different states on the other, which can be fully determined without the presence of the other parties to the suit as it has been begun." ' Hyde v. Ruble, 104 U.S. 407 [26 L.Ed. 823]; Fraser v. Jennison, 106 U.S. 191, 1 S.Ct. 171 [27 L.Ed. 131]. * * *

"Separate answers by the several defendants sued on joint causes of action may present different questions for determination, but they do not necessarily divide the suit into separate controversies. A defendant has no right to say that an action shall be several which a plaintiff elects to make joint. Smith v. Rines [Fed.Cas.No.13,-100] 2 Sumn. [338] 348. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit,

whatever the plaintiff declares it to be in his pleadings. Here it is certain joint contracts entered into by all the defendants for the transportation of property. On the one side of the controversy upon that cause of action is the plaintiff, and on the other all the defendants. The separate defenses of the defendants relate only to their respective interests in the one controversy. The controversy is the case, and the case is not divisible."

The paragraph just quoted was repeated in Torrence v. Shedd, 144 U.S. 527, 530, 12 S.Ct. 726, 36 L.Ed. 528, 531, where other decisions to the same effect are cited.

Counsel for Jesse .W. De Vilbiss rely mainly upon the case of Barney v. Latham, 103 U.S. 205, 26 L.Ed. 514, decided in 1881, and the case of Geer v. Mathieson Alkali Works, 190 U.S. 428, 23 S.Ct. 807, 811, 47 L.Ed. 1122, decided in 1903.

The suit of Barney v. Latham was brought originally in a state court of Minnesota, by two plaintiffs, citizens, respectively, of Minnesota and Indiana. There were ten defendants, namely, a Minnesota corporation styled Winona & St. Peter Land Company, and nine individuals, seven of them being citizens of New York, one being a citizen of Wisconsin, and one being a citizen of Massachusetts. As far as the land company . was concerned, of course, the case was not removable to the federal court. On the other hand, every one of the nine individual defendants was a citizen of a state other than either of the states of which the plaintiffs were, respectively, citizens. The nine individual defendants, therefore, averring that there was in

the suit a separate controversy which was wholly between them on the one side and the plaintiffs on the other, and which could be fully determined between them and the plaintiffs, filed a petition and bond in the state court for the removal of the case to the federal court; and the state court entered an order that it would proceed no further. But the federal court, on motion of the plaintiffs, remanded the suit to the state court, on the ground that there was not in the suit a controversy which was wholly between citizens of different states and which could be fully determined as between them. On appeal, the Supreme Court of the United States found that the suit consisted of two separate and distinct controversies, one being between the plaintiffs and the Minnesota corporation, and the other being between the plaintiffs and the individual defendants, citizens of other states. The demand against the Minnesota corporation was for a certain interest in all unpaid contracts and securities for the sale of certain lands, and for an accounting by the company for all lands sold by it, and for a conveyance to the plaintiffs of a certain interest in all unsold lands. The demand against the individual defendants was for an accounting and payment of certain moneys alleged to have been received by them. The court stated the question which was presented, thus: "Does the fact that the land company, one of the defendants, is a corporation of Minnesota, of which State one of the plaintiffs is a citizen, prevent a removal of the suit to the Circuit Court of the United States?" After analyzing the provisions of the second clause of the second section of the Act of March 3, 1875,

18 Stat. 470 (28 U.S.C.A. § 71 note), and all prior enactments on the subject, the court stated the conclusion, thus:

"It remains only to inquire how far this construction of the act of 1875 controls the decision of the case now before us. The complaint, beyond question, discloses more than one controversy in the suit. There is a controversy between the plaintiffs and the Winona and St. Peter Land Company, to the full determination of which the other defendants are not, in any legal sense, indispensable parties, although, as stockholders in the company, they may have an interest in its ultimate disposition. Against the latter, as a corporation, a decree is asked requiring it to convey to the plaintiffs the undivided two-ninths of one thirty-seventh of certain lands, and to account for the proceeds of the lands by it sold subsequently to the conveyance from the railroad company.

"But the suit as distinctly presents another and entirely separate controversy, as to the right of the plaintiffs to a decree against the individual defendants for such sum as shall be found, upon an accounting, to be due from them upon sales prior to the conveyance from the railroad company. With that controversy the land company, as a corporation, has no necessary connection. It can be fully determined as between the parties actually interested in it without the presence of that company as a party in the cause. Had the present suit sought no other relief than such a decree, it could not be pretended that the corporation would have been a necessary or indispensable party to that issue. Such a controversy does

not cease to be one wholly between the plaintiffs and those defendants because the former, for their own convenience, choose to embody in their complaint a distinct controversy between themselves and the land company. When the petition for removal was presented, there was in the suit, as framed by plaintiffs, a controversy wholly between citizens of different States, that is, between the plaintiffs, citizens, respectively, of Minnesota and Indiana, and the individual defendants, citizens of New York, Wisconsin, and Massachusetts. And since the presence of the land company is not essential to its full determination, the defendants, citizens of New York, Wisconsin, and Massachusetts, were entitled, by the express words of the statute, to have the suit removed to the Federal court. * * *

"Under their mode of pleading, whether adopted with or without a purpose to affect the right of removal, accorded by the statute, the suit presents two separate controversies, one of which is wholly between individual citizens of different States, and can be fully determined without the presence of the other party defendant. The right of removal, if claimed, in the mode prescribed by the statute, depends upon the case disclosed by the pleadings as they stand when the petition for removal is filed. The State court ought not to disregard the petition, upon the ground that, in its opinion, the plaintiffs, against whom a removal is sought, had united causes of action which should or might have been asserted in separate suits. Those are matters more properly for the determination of the trial court, that is, the Federal court, after the cause is

there docketed. If that court should be of opinion that the suit is obnoxious to the objection of multifariousness or misjoinder, and for that reason should require the pleadings to be reformed, both as to subject-matter and parties, according to the rules and practice which obtain in the courts of the United States, and if, when that is done, the cause does not really and substantially involve a dispute or controversy within the jurisdiction of that court, it can, under the ·fifth section of the act of 1875 [see 28 U.S.C.A. § 80], dismiss the suit, or remand it to the State court as justice requires.

"We are of opinion that, upon the filing of the petition and bond by the individual defendants in the separable controversy between them and the plaintiffs, the entire suit, although all the defendants may have been proper parties thereto, was removed to the Circuit Court of the United States, and that the order remanding it to the State court was erroneous."

· The doctrine of the case of Barney v. Latham is well explained in Hyde v. Ruble, decided in 1882, and published in the same book, 104 U.S. 407, 409, 26 L.Ed. 823. That was a suit on a contract, and was begun in a state court of Minnesota. The two plaintiffs and one of the three defendants were citizens of Minnesota. Of the two other defendants, one was a citizen of Wisconsin and the other a citizen of Iowa. The action was brought to recover the price of wheat stored by the plaintiffs with the defendants, at a stipulated rate of storage, and under a contract on the part of the defendants to buy the wheat at an agreed price

whenever. the plaintiffs would want to sell it. The defendant who was a citizen of Minnesota filed a separate answer to the suit, denying that there was a partnership between him and the two other defendants, and setting up a full performance of his obligations under the contract. The two other defendants in their answer also denied that there was a partnership between them and their codefendant, or any contract between them and the plaintiffs. Thereafter, the three defendants filed a petition in the state court for the removal of the case to the Circuit Court of the United States for the District of Minnesota, on the ground of diverse citizenship; but the circuit court remanded the suit to the state court; and the Supreme Court affirmed the order to remand. In deciding the matter the court distinguished the case from that of Barney v. Latham, thus:

"To entitle a party to a removal under this clause [2nd clause of 2nd section of the Act of March 3, 1875] there must exist in the suit a separate and distinct cause of action in respect to which all the necessary parties on one side are citizens of different States from those on the other. Thus, in Barney v. Latham, 103 U.S. 205 [26 L.Ed. 514], two separate and distinct controversies were directly involved: one as to the lands held by the Winona & St. Peter Land Company, in respect to which the land company was the only necessary party on one side and the plaintiff on the other; and the second as to the moneys collected from the sales of lands before the land company was formed, and as to which only the natural persons named as defendants were the

necessary parties on one side and plaintiffs on the other. One was a controversy about the land and the other about the money. Separate suits, each distinct in itself, might have been properly brought on these two separate causes of action, and complete relief afforded in each suit as to the particular controversy involved. In that about the land, the land company would have been the only necessary defendant; and in that about the money, the natural persons need only have been brought in. In that about the land there could not have been a removal, because the parties on both sides would have been citizens of the same State; while in that about the money there could have been, as the plaintiffs would all be citizens of one State, while the defendants would all be citizens of another. When two such causes of action are found united in one suit, we held in the case last cited there could be a removal of the whole suit on the petition of one or more of the plaintiffs or defendants [now only the defendants] interested in the controversy, which, if it had been sued on alone, would be removable. But that, we think, does not meet the requirements of this case. This suit presents but a single cause of action, that is to say, a single controversy. The issues made by the pleadings do not create separate controversies, but only show the questions which are in dispute between the parties as to their one controversy."

Geer v. Mathieson Alkali Works was a suit to set aside a conveyance made by the Mathieson Company, of all of its property, to the Castner Electrolytic Company, on the ground that the conveyance was fraudu-

lent. The suit was commenced in a state court of New York. The plaintiffs were stockholders in the Mathieson Company. Some of them were citizens of New York, some were citizens of other states, other than Virginia, and some were citizens of Great Britain and Ireland. The defendants were the Mathieson Company and the Castner Company, both Virginia corporations, and the directors of the Mathieson Company, citizens of New York. On the petition of the Mathieson Company and the Castner Company, the case was removed to the federal court, on the ground that there was in the suit a controversy which was wholly between the plaintiffs on the one side and the two corporations on the other side, that is to say, wholly between citizens of different states, and which could be fully determined as between them. The plaintiffs moved in the federal court to remand the case to the state court, but the motion was denied. Thereafter, the Mathieson Company moved to set aside the service of summons, on the ground that the company was a foreign corporation, was not transacting business in New York, and had no place of business in that state. The service of summons on the Mathieson Company was set aside, and the plaintiffs appealed. The Supreme Court said that the service of summons was not sufficient to give the federal court jurisdiction of the Mathieson Company, and therefore that the order setting aside the service of summons should be affirmed if the case was properly removed to the federal court. The court said that that depended upon the question whether the complaint showed a

separable controversy between the plaintiffs and the two Virginia corporations. The court held that the complaint did show a separable controversy between the plaintiffs and the two Virginia corporations, because the relief prayed for against the two corporations was entirely different from the relief prayed for against the directors of the Mathieson Company, and the directors were not necessary parties to the controversy between the plaintiffs and the Mathieson Company. The relief prayed for against the two companies was that the conveyance should be adjudged fraudulent and be annulled; that a receiver should be appointed to take charge of the Mathieson works; that its directors should be enjoined from making any further disposition of its property; that the complainants should have access to all of its books, records and papers, including its stock book; and that the Castner Company should pay all damages sustained by complainants to the Mathieson Company, and account for and pay all income, earnings and revenue of the property since the date of the fraudulent conveyance. The relief prayed for against the individual defendants, who were directors of the Mathieson Company, was that they should be compelled to account as agents and trustees of the company for all their acts and doings in the premises set forth, and should be severally and respectively required to make good and pay all loss and damage caused by their wrongful conduct in the premises.

The court took occasion to say, in Geer v. Mathieson Alkali Works, that, although the directors of the company might be *proper* parties to such a suit, they were not *indispensable* parties, and that the ruling by Lord Cairns in Ferguson v. Wilson, L. R. 2 Ch. 90, repeated in Clinch v. Financial Corporation, L. R. 4 Ch. 117, that it was proper, in a suit by a stockholder to restrain ultra vires acts of a corporation, to join as defendants the directors of the corporation, was reconcilable with the doctrine that the directors of a corporation are not necessary or indispensable parties to such a suit. The court said: "The reconciliation lies in the distinction between proper and indespensable parties in view of the statute providing for the removal of causes to the Federal courts. Barney v. Latham, 103 U.S. [205] 212, 26 L.Ed. [514] 517." And, referring to the relief prayed for against the individual defendants, directors of the Mathieson Company, the court said:

"If it be conceded that, in a suit which seeks such relief, the Mathieson Company is a necessary party, it is certain the Castner Company is not. Besides, the relief is distinct from—separable from, to keep to the language of the cases—that which is sought as a result of the grounds of suit against the companies.

"It follows from these views that the bill exhibits a controversy between the plaintiffs and the defendant companies, to which the individual defendants are not necessary parties, and the case was rightfully removed to the circuit court."

There is no such analogy between this case and either Barney v. Latham or Geer v. Mathieson Alkali Works as to make the ruling in either of those cases controlling or even quite appropriate here.

■ Our conclusion is that there is ·not in this suit a controversy which is wholly between the plaintiff and Jesse W. De Vilbiss, and which can be fully determined as between them, as required by U.S.C.A., title 28, § 71, to warrant the removal of the case to the federal court.

■ The appellant in this case, while insisting that the case is not removable to the federal court, contends also that the petition for removal was defective in some respects. We have so far pretermitted these complaints because there was no necessity for considering them if in fact the case was not removable to the federal court. Besides, we doubt very much that the complaints about the procedure are well founded. For example, appellant contends that the allegation in the petition for removal, that Jesse W. De Vilbiss was at the time when he filed his petition for removal, and had been for some time prior to the filing of this suit, a resident and citizen of California, was not the same as to say that he was a resident and citizen of California at the time when the suit was filed. If the allegation in that respect was defective, the defect seems to have been removed by the filing and allowance of a supplemental petition in the federal court. Such amendments are provided for specifically in U.S.C.A., title 28, § 399, Judicial Code, § 274c. There is no reason now why we should pass judgment upon the efficacy of the amendment, or the necessity for the amendment, which was allowed by the federal court, to which the case was removed. The next complaint about the method of procedure is that in the petition for removal Jesse W. De Vilbiss did not allege that prior notice of the filing of the petition ·and bond was given to the plaintiff. It is admitted that the written notice required by the statute was in fact given. We do not find any provision in U. S.C.A., title 28, § 72 (Judicial Code, § 29), which section prescribes the procedure for the removal of cases, that requires or suggests that it must be alleged in the petition that the prior written notice required by the statute was given. The statute merely requires that the written notice shall be given to the adverse party prior to the filing of the petition and bond. Another complaint is that the notice which was given did not state the time when or place where the petition for removal would be presented. The notice, a copy which is in the record, gave the date on which and the hour at which the petition and bond would be presented, and the name of the court to which it would be presented, the amount of the bond which would be tendered, etc.; all of which seems to comply with the requirements of the statute. There is no necessity, however, for this court to pass judgment upon the regularity of the procedure—and we do not pass judgment thereon—because of our conclusion that the character· and nature of the suit is such that it is not removable to the federal court.

The order appealed from is set aside, and it is now ordered that the case shall be proceeded with according to the opinion which we have expressed—this decree, however, to be subject to and dependent upon such action as the federal court may take in the matter now pending in that

court. Jesse W. De Vilbiss is to pay the costs of this appeal.

FOURNET, J., recused.