## FOURNET v. DE VILBLISS et al.
### No. 739.

District Court, W. D. Louisiana, Lake Charles Division.

May 13, 1938.

S. W. Plauche and J. E. Bass, both of Lake Charles, La., for complainant.

Pujo, Hardin & Porter, of Lake Charles, La., for respondents.

DAWKINS, District Judge.

Plaintiff alleges that in the month of July, 1933, he was employed as attorney at law by Jesse W. DeVilbliss, Roy DeVilbliss and Herbert DeVilbliss, through the last named acting for himself and on behalf of the other two, his father and brother, respectively, to protect their titles to and interest in the South half (S.½) of Section 11, Township 9, S. Range 4 W, "owned by the said Jesse W. DeVilbliss", and the North half (N½) of Section 14, Township 9,. S. Range 4 W (less ½ of the oil, gas and other minerals), "owned by the said Jesse W. DeVilbliss, Roy DeVilbliss and Herbert DeVilbliss, in the proportions of an undivided one-third (⅓) interest to each of them", against foreclosure of certain alleged liens and encumbrances, and in event of inability to defeat said claims of other persons, to delay until the clients could sell off sufficient of their mineral interests to pay and discharge said claims; that under the terms of his employment, which was verbal, the defendants "bound and obligated themselves to transfer, set over and deliver unto your petitioner, as soon as and whenever the said properties hereinabove described were released from the said mortgages and vendors liens, a 20% undivided interest in and to all of the oil, gas and other mineral royalty interests respectively owned by them and remaining in their names after the cancellation and release of said encumbrances, which said twenty percent (20%) interest was to be full and entire compensation to

your petitioner for services rendered by him, as aforesaid"; that under said employment, petitioner rendered valuable professional services and although unable to defeat said claims, in view of the facts, he did succeed in preventing foreclosure until defendants were able to sell sufficient of their interests to discharge said liens; that when his professional labors had been completed, the title of defendant Jesse W. DeVilbliss in certain undivided fractional interests of royalties in the lands in Section 11, Township 9, S. R. 4 West, remained clear and unencumbered; while the titles of all the defendants in a similar undivided interest in the property in Section 14 were likewise clear and left unencumbered "to twenty percent (20%) of which your petitioner is entitled under and by virtue of his said contract of employment by and with said defendants, as aforesaid", and which interest petitioner alleges is "worth the aggregate sum of Fifty Thousand ($50,000) Dollars."

In the alternative, plaintiff alleges that, if the said contract "is not specifically enforcible", then he is entitled to "a money judgment against the said defendants for the value of the said twenty percent (20%) royalty interest, to-wit: Fifty Thousand ($50,000) Dollars, as compensation for his services"; said money judgment to be against each of said defendants in proportion to their respective royalty interests, as set out in Article 16 of the petition.

As a second alternative, plaintiff asks that he be compensated "on a quantum meruit basis" for the services so rendered, which he alleges were well worth the said sum of $50,000.

Plaintiff further alleges as follows:

"22. That in addition to the above, the said defendants have been receiving payments in money for oil on said property described in Article 6 in this petition since petitioner's twenty per cent (20%) interest became due and exigible, on or about July 18, 1934; that your petitioner is entitled to twenty percent (20%) of the value of all of the said royalty money received by the defendants since said date, which your petitioner is informed amounts to several thousand dollars, and to that end your petitioner is entitled to an accounting from the said defendants for his said twenty per cent (20%) interest on the trial of this cause."

The prayer was in accordance with the allegations of the petition.

Jesse W. DeVilbliss, the father of the other two defendants, appeared in the State court and, notwithstanding the petition alleged him to be a citizen of Louisiana, claiming citizenship in California, filed a petition for removal to this court of the suit, alleging as to himself, there was an independent controversy which could be fully and completely determined without the presence as parties, of his two sons. The order of removal was granted by the State court, but on appeal to the Supreme Court of Louisiana, it was reversed on the finding that there was no separate controversy between plaintiff and the said Jesse W. DeVilbliss. Fournet v. De Vilbiss, 187 La. 191, 174 So. 259.

For the purposes of appeal to the State Supreme Court, and in the present instance, no question has been raised as to Jesse W. DeVilbliss being a citizen of California.

Plaintiff has filed a motion to remand the cause to the State Court on the ground that there is no separate controversy, which can be wholly determined as between him and the said defendant, without the presence of the others.

The plaintiff is presently a member of the State Supreme Court, and of course, was recused on his appeal, but the issue was decided by an otherwise unanimous court, through the Chief Justice as its organ, who made a thorough review of the federal cases. However, defendant, while admitting that the decisions of the State court of last resort are controlling as to whether the obligations of the defendants there are joint or several under the State law, contends that at the time of the filing of the petition to remove, the jurisprudence of the State was contrary to that court's ruling in the present matter, and it could not be afterwards changed to his prejudice; and that to hold otherwise would be to concede to the State court the power to determine the removability of any case upon the ground in question, which is a function of the federal courts.

I agree with counsel for the defendant, that the State court's decision as to the right to remove, is not binding on this court, and that the law in effect at the time of the application to remove should control. However, the State court's decision as to the nature of the obligation under its laws—that is whether joint or several—must be accepted by the federal courts.

From the allegations of the petition above stated and quoted, it is clear that the obligation of the plaintiff under the alleged contract was indivisible, in that he agreed

to render his professional services as a whole for and on behalf of all of the defendants in defeating the claims of other persons to liens and encumbrances resting against the properties of all, in which at least as to one tract, they each owned an undivided one-third interest. Certainly as to the last mentioned tract, each and everyone of them had the right to exact performance, and the plaintiff could not lawfully divide his duties and protect the undivided interest of any one without the others. Had this tract alone been involved, and nothing had been said as to the proportion in which his fee was to be paid, then it would have been recoverable on the basis of one-third against each defendant.

The Louisiana Revised Civil Code, Art. 2080, provides: "When several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors."

If, as stated, nothing had been said as to how the fee was to be paid, the implied promise would have been "to do the same thing", i. e., pay a proper fee. The Article does not mean that each shall "do" the whole of "the same thing", as such a contract involves what is known to the Louisiana law as an obligation in solido, as defined in Article 2082, which reads: "When several persons obligate themselves to the obligee by the terms in solido, or use any other expressions, which clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, it is called an obligation in solido on the part of the obligors."

Art. 2086 declares: "In a suit on a joint obligation, judgment must be rendered against each defendant separately, for his proportion of the debt or damages, if the suit resolves itself into damages. If the suit be for a specific performance, each defendant may be compelled to execute his proportion of the obligation, if the nature of the case permit and justice require it. The proportion, meant by this and the succeeding articles, is calculated by the number of the obligors, each one answering for an equal part, unless the parties have expressed a different intention."

It seems clear, therefore, in an action against joint obligors, each is responsible only for his virile share, to be determined according to the number obligating themselves, "unless the parties have expressed a different intention". According to the petition in this case, the parties did express a different intention, and that was each should be answerable for plaintiff's fee to the extent of 20% of his interest in the respective mineral rights, the liens against which were defeated, or which remained after sale of a portion and discharge of those liens. However, this did not change the nature of the obligation or contract. Their obligation to pay the fee of plaintiff in the proportion stipulated still remained a joint one. The manner in which it was to be discharged was merely an incidental or accidental provision of the contract.

Under Article 2085, it was required that "In every suit on a joint contract, all the obligors must be made defendants, and no judgment can be obtained against any, unless it be proved that all joined in the obligation, or are by law presumed to have done so", and until the passage of the Act No. 103, Extra Session of 1870 (printed in Acts of 1871, p. 18), they all had to be sued together, and it was held by the State courts that this could be done at the domicile of any of them, regardless of whether they resided in the same Parish, on the theory that by signing or becoming party to such a joint obligation, they had tacitly waived the venue and consented to be sued together at one place. Thompson v. Chretien, 3 Rob., La., 26; Toby v. Hart, 8 La. 523. By the enactment of the said statute of 1870, it was made possible for the obligee to sue separately any one of joint obligors "for the proportion of the debt or obligation due by them respectively, whether all are joined in the suit or not"; it being specifically provided that "Hereafter * * * it shall be unnecessary to make all the obligors parties to the suit." Section 2. This statute was enacted for the benefit of the obligee, and to save the inconvenience of attempting to bring all the joint obligors into one suit, it sometimes occurring that one or more might be out of the State or beyond the jurisdiction of the court upon whom service could not be had. Art. 165 of the Code of Practice was later amended to specifically provide that joint obligors might all be sued at the domicile of any one of them, further supporting the idea that the change in the law was for the benefit of the obligee. Neither statute, however, made any change in the nature of joint obligations.

Article 2085, above quoted, clearly provides as to joint obligors that "no judgment can be obtained against any, unless it be proved that all joined in the obligation, or are presumed by law to have done so."

 

From this it appears that not only was the contract in the present case indivisible, in so far as plaintiff was bound to render professional services for all, but if he fails to establish his claim as to one, he cannot recover against any.

Art. 2087 provides: "If one of the obligors in a joint obligation has performed or discharged his part of the obligation, although he must be joined in the suit, on account of the eventual interest he has for the repetition of his payment, if the contract be disproved or annulled; yet, if the contract be affirmed, the defendant, who has paid his proportion or performed his part, shall have judgment. The judgment for the costs is in solido against all the defendants who have not paid or performed their parts."

It would seem, therefore, that every joint obligor is vitally concerned in any action against any other co-obligor, for, if it be proved and held that one is not bound, it has the effect of releasing all the others, and permitting even those who have voluntarily paid, to recover. Plaintiff in such a suit is also entitled to recover his costs in solido against all those who have not paid.

Art. 2078 of the Code defines several obligations as follows: "Several obligations are produced, when what is promised by one of the obligors, is not promised by the other, but each one promises separately for himself to do a distinct act; such .obligations, although they may be contained in the same contract, are considered as much individual and distinct as if they had been in different contracts, and made at different times."

In the present case, at least as to the property held in indivision by all three defendants, the promise, according to the petition, was to do the same act,—that is convey to plaintiff an undivided 1/20th interest in the minerals thereunder as to which defendants were finally established to be the owners in proportion to that ownership, in discharge of a common or joint promise. So long as those interests remained undivided, each one owned a corresponding part in the smallest imaginary fraction of said property. A conclusive judgment as to whether all of the defendants as joint obligors were bound, cannot be rendered without their presence in the suit. Therefore, the controversy between plaintiff and Jesse W. DeVilbliss cannot be fully decided in the absence of the other defendants.

It can make no difference that the plaintiff might have sued any one of the defendants on the present cause of action without making the others parties. C.J. Vol. 54, p. 291, Sec. 181, and cases in footnote No. 82.

My view is that this case should be remanded to the State Court.

Proper decree should be presented.