The **WINGATE CORPORATION,**
Plaintiff,

v.

**INDUSTRIAL NATIONAL BANK et al.,**
**Defendants.**

Civ. A. No. 3847.

United States District Court
D. Rhode Island.
July 25, 1968.

Edward J. Regan, Eustace T. Pliakas, of Graham, Reid, Ewing & Stapleton, Providence, R. I., for plaintiff.

Matthew W. Goring, Providence, R. I., for Industrial Nat. Bank.

Edward M. Watson, of Hinckley, Allen, Salisbury & Parsons, Providence, R. I., Matthew Hale, General Counsel, The American Bankers Ass'n, Washington, D. C., for defendant.

Edward P. Gallogly, U. S. Atty., Providence, R. I., Carl Eardley, Harland F. Leathers, Marshall A. Lemov, C. Westbrook Murphy, Richard C. Doersch, Washington, D. C., for defendant-intervenor William B. Camp, Comptroller of the Currency.

Robert J. McOsker, City Sol., Vincent J. Piccirilli, Asst. City Sol., Providence, R. I., for City of Providence.

## OPINION

DAY, Chief Judge.

In this action the plaintiff seeks a declaratory judgment, injunctive relief and compensatory damages on the ground that the marketing of electronic data processing services by the defendant Industrial National Bank of Rhode Island is illegal, contrary to law and constitutes illegal competition with the plaintiff and others engaged in the business of furnishing such data processing services to the public at large.

This action was originally instituted against said Industrial National Bank of Rhode Island. Upon the filing of its complaint, the plaintiff sought an ex parte restraining order enjoining said defendant from executing a contemplated contract with the City of Providence, a municipal corporation, under the terms of which the defendant, its agents and servants would perform certain data processing services for said City of Providence. This relief was denied by me.

Subsequently William B. Camp, Comptroller of the Currency of the United States, and said City of Providence were granted leave to intervene as parties defendant. Thereafter plaintiff filed an amended complaint against said three defendants.

In said amended complaint plaintiff alleges that it, a corporation organized under the laws of the State of Rhode Island, and doing business as the Wingate Computing Center, is engaged in the business of marketing and performing data processing services for the general

business community; that the defendant Industrial National Bank of Rhode Island is a national banking association organized and established under the National Bank Act with its principal place of business in the City of Providence, in the State of Rhode Island; that this action arises under the National Bank Act and involves an interpretation and application of said Act and a determination of the powers granted to national banking associations under the provisions of said Act as set forth in Title 12 U.S.C. § 24; that the defendant Comptroller of the Currency has by administrative ruling authorized the defendant Industrial National Bank of Rhode Island and other national banks to perform data processing services for the public at large; that said Comptroller of the Currency and said defendant bank may exercise only those powers granted to them, respectively, by said National Bank Act; that under the provisions of Title 12 U. S.C. § 24, paragraph Seventh, a national banking association has power:

"to exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; * * *"

and that in no section of said National Bank Act is a national banking association authorized to engage in any other business activities which are not necessary to carry on the business of banking, and more specifically, that there is no provision in said Act authorizing a national banking association to engage in the business of offering and performing data processing services on equipment owned by it for the public at large.

Plaintiff further alleges that the ruling [1] by said Comptroller of the Currency authorizing national banking associations to engage in the marketing of data processing services is, therefore, "in violation of the National Bank Act, beyond statutory authority, arbitrary, capricious, an abuse of discretion and not in accordance with law"; that the defendant bank is engaged in the business of performing data processing services for the public at large not necessary to carry on the business of banking, which said activities are beyond the grant of powers to national banking associations and are unlawful and constitute illegal competition with the plaintiff and other persons similarly engaged in the business of furnishing data processing services for the public at large; that on October 2, 1967, said defendant bank entered into a contract with said City of Providence for the performance of such data processing services then being performed by its employees, and, further, that it is advised that the defendant bank did commence to perform such services on or about October 1, 1967; and that said activities of the defendant bank in performing and holding itself out as willing to perform data processing services for the City of Providence and the public at large are illegal, not a part of, incidental to or necessary to carrying on the business of banking, and are beyond the powers granted to national banks under said Act; that by performing said illegal data processing services and by holding itself out as willing and able to perform such services the defendant bank has caused, and unless restrained and enjoined, will cause substantial and irreparable harm to the plaintiff and to other persons engaged in the business of furnishing data processing services to the public at large by depriving them of customers for whom data processing services would be rendered and from whom compensation would be received, and that it has suffered injury and damage and is continu-

1. The present form of this ruling, set forth in Par. 3500 in Comptroller's Manual For National Banks (1966 Ed.) is:

"3500. *Utilization of data processing equipment*
Incidental to its banking services, a national bank may make available its data processing equipment or perform data processing services on such equipment for other banks and bank customers."

ing to suffer injury and damage by the unlawful authorization of the defendant Comptroller of the Currency and said illegal activities of the defendant bank.

In its answer the defendant, Industrial National Bank of Rhode Island, admits that it has in the past and is presently offering incidental to its banking services to make available, and is performing data processing services for its customers and for other banks, but denies that it has offered in the past or presently is offering to perform data processing services for the public at large, not incidental to its banking services. It also admits that it has entered into a contract for the performance of certain data processing services for the City of Providence, one of its customers, and denies that the performance by it of such services for said City of Providence and other bank customers would be illegal or beyond its statutory powers.

The City of Providence in its answer admits the execution by it of said contract with said Industrial National Bank of Rhode Island for the performance by it of the data processing services described therein, and likewise denies that the performance thereof by the latter would be illegal or beyond its statutory powers.

This matter is now before me upon the motion of each of the defendants to dismiss this action upon the grounds that the plaintiff lacks standing to maintain this action and that this Court lacks jurisdiction over the subject matter thereof.

Plaintiff contends that it has standing to challenge the validity of said ruling by the Comptroller of the Currency under the provisions of Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, which provides as follows:

"Rights of Review.

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof."

In construing a substantially similar provision in the Administrative Procedure Act, prior to its amendment in 1966, the Court of Appeals for the District of Columbia Circuit in Pennsylvania Railroad Company v. Dillon, 1964, 118 U.S.App.D.C. 257, 335 F.2d 292, cert. denied sub nom. American Hawaiian S.S. Co. v. Dillon, 1964, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 held at pages 294, 295:

"* * * Under this statute appellants have standing to challenge agency action which they allege either causes them a 'legal wrong' or adversely affects or aggrieves them 'within the meaning of any relevant statute'.

" 'Legal wrong', as we have only recently noted, is the invasion of a legally protected right. See Gonzalez v. Freeman, supra, 118 U.S.App.D.C. at 186 n. 6, 334 F.2d at 576 n. 6. Thus, in order to make out a claim of 'legal wrong' under Administrative Procedure Act § 10(a), appellants must assert some legally protected right to be free of the competition provided by the two vessels whose documentation they are challenging. This court has very recently spoken on this aspect of standing. When 'Congress has not given them any such standing by express or implied provision of statute * * *, mere economic competition made possible by governmental action (even if allegedly illegal) does not give standing in the courts to sue to restrain such action. Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955).' Texas State AFL–CIO v. Kennedy, 117 U.S.App. D.C. 343, 345, 330 F.2d 217, 219 (1964). For purposes of standing in

this case, the sufficiency of appellants' allegations of 'legal wrong' thus depend upon congressional intent to bestow upon them a legal right to protection from such competition.

"Similarly, appellants' allegations that they are 'adversely affected or aggrieved * * * within the meaning of any relevant statute' depend for their adequacy as to standing upon the congressional purpose underlying the relevant sections of the Merchant Marine Act of 1920, as amended. * * * "

To the same effect see: Rural Electrification Administration v. Northern States Power Company, 1967, 8 Cir., 373 F.2d 686; Rural Electrification Administration v. Central Louisiana Electric Company, 1966, 5 Cir., 354 F.2d 859; Braude v. Wirtz, 1965, 9 Cir., 350 F.2d 702; Troutman v. Shriver, 1967, D.C. Fla., 273 F.Supp. 415.

In the recent case of Hardin v. Kentucky Utilities Co., 1968, 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787, the Supreme Court in passing upon the standing of Kentucky Utilities Company to maintain said action, said at page 5, at page 654 of 88 S.Ct.:

"Before discussing the merits, we shall briefly consider petitioners' contention that the Kentucky Utilities Company lacks standing to challenge the legality of TVA's activities. We agree with both the courts below that this contention is without merit. This Court has, it is true, repeatedly held that the economic injury which results from lawful competition cannot, in and of itself, confer standing on the injured business to question the legality of any aspect of its competitor's operations. Railroad Co. v. Ellerman, 105 U.S. 166, 26 L.Ed. 1015 (1881); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); Tennessee Power Co. v. TVA, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.

Ed. 1108 (1940). But competitive injury provided no basis for standing in the above-cases simply because the statutory and constitutional requirements that the plaintiff sought to enforce were in no way concerned with protecting against competitive injury. In contrast, it has been the rule at least since the Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667 (1924), that when the particular statutory provision invoked does reflect a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision. See Alton R. Co. v. United States, 315 U.S. 15, 19, 62 S.Ct. 432, 86 L.Ed. 586 (1942); City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 83, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).

"Petitioners concede, as of course they must, that one of the primary purposes of the area limitations in § 15d of the Act was to protect private utilities from TVA competition. * * * Since respondent is thus in the class which § 15d is designed to protect, it has standing under familiar judicial principles to bring this suit, see Stark v. Wickard, 321 U.S. 288, 309, 64 S.Ct. 559, 88 L.Ed. 733 (1944); cf. United States v. I. C. C., 337 U.S. 426, 433–434, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949), and no explicit statutory provision is necessary to confer standing."

In my opinion the cases relied upon by the plaintiff to support its claim of standing to maintain this action and to entitle it to the relief it seeks herein are clearly distinguishable from the instant case.

In National Bank of Detroit v. Wayne Oakland Bank, 1958, 6 Cir., 252 F.2d 537, the plaintiff state bank was held to have standing to maintain an action to enjoin the establishment of a branch bank by the defendant, National Bank of Detroit, on the ground that it was protected against the competition of such a proposed branch bank by the provisions of

12 U.S.C. § 36(c) which incorporated by reference the statute law of the State of Michigan and under the circumstances existing the establishment of the proposed branch was prohibited by the statute law of Michigan. In holding that the plaintiff had standing to maintain its suit, the Court of Appeals held at page 544:

> "As to the standing of The Wayne Oakland Bank to maintain its suit, it was faced with invasion of property rights and injury from a competition which was prohibited by the federal statutes subjecting national banks to the same rules of law as cover state banks. * * *"

Suburban Trust Company v. National Bank of Westfield, 1962, D.C.N.J., 211 F.Supp. 694, is likewise a branch bank case. The plaintiff was held to have standing to maintain a suit to enjoin competition by a branch bank of the defendant national banking association under the provisions of 12 U.S.C. § 36(c). Title 12 U.S.C. § 36(c) permits a national banking association, with the approval of the Comptroller of the Currency, to establish and operate new branches— "(2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks." Suburban sought to enjoin the establishment and operation of said branch bank in a location in which state banks by New Jersey law (N.J.S.A. 17:9A–18) were prohibited from establishing and maintaining branches. The courts held that plaintiff had standing to sue by virtue of the provisions of 12 U.S.C. § 36(c).

Commercial State Bank of Roseville et al. v. Gidney, 1959, D.C.D.C., 174 F. Supp. 770, aff'd 108 U.S.App.D.C. 37, 278 F.2d 871, is likewise a branch bank case. The plaintiffs, Michigan state banks, sought a preliminary injunction to restrain the Comptroller of the Currency from issuing a certificate authorizing a national bank to open a branch office in Michigan. The court found that branch banking (banking operations at other than the principal office) by national banks is regulated by state law under the provisions of 12 U.S.C. § 36(c), and that the plaintiffs had standing to sue as they sought to enjoin unlawful competition, i.e., competition prohibited by the statutes of the State of Michigan and enacted for their protection.

Similarly, Whitney National Bank in Jefferson Parish v. Bank of New Orleans and Trust Company, 1963, 116 U.S. App.D.C. 285, 323 F.2d 290, is a branch bank case. The Court of Appeals held that the plaintiff state bank had standing to sue to enjoin the establishment of a branch bank by Whitney National Bank which was prohibited under the provisions of 12 U.S.C. § 36(c).

In Webster Groves Trust Company v. Saxon, 1966, 8 Cir., 370 F.2d 381, also relied upon by the plaintiff, the Court of Appeals held that competing banks as interested parties had standing to object to illegal competition but concluded that the Comptroller of the Currency was under no duty to hold a formal hearing on an application for a charter for a new national bank.

In Baker, Watts & Co. v. Saxon, 1966, D.C.D.C., 261 F.Supp. 247, the plaintiffs sought to enjoin the Comptroller of the Currency from authorizing national banks to underwrite and deal in certain securities. The gravamen of their complaint was that they would then be subjected to illegal competition to their detriment. In holding that the plaintiffs had standing to maintain said suit, the court held that the Glass-Steagall Act, 12 U.S.C. § 378, prohibited such activities by national banks.

In Georgia Association of Independent Insurance Agents, Inc. v. Saxon, 1966,

D.C.Ga., 260 F.Supp. 802, the plaintiffs were independent insurance agents and organizations which represented the collective interests of independent insurance agents. They sought a declaratory judgment and an injunction against allegedly illegal acts by the defendant Comptroller of the Currency. In that case the defendant had authorized national banks in places with a population which exceeded five thousand inhabitants to act as insurance agents in writing insurance which was incidental to banking transactions, although Section 92 of Title 12 of the United States Code permitted national banks to act as insurance agents in places whose population did not exceed five thousand inhabitants. Plaintiffs alleged that the defendant was without authority to make said ruling which was in violation of Title 12 U.S.C. § 92, and that as the result of said ruling, national banks were able to compete illegally with the plaintiffs.

In denying the defendant's motion to dismiss for want of standing, the Court held at page 803:

"In Tennessee Power Company, supra, and in Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1937), the plaintiffs alleged that they were suffering economic loss from government-created competition. In both cases the Supreme Court held that such economic loss alone did not confer standing on the aspiring plaintiffs. It is important to note that such competition was authorized by Congress and was based upon statutory grounds.

"In the instant case, the competition complained of is not explicitly authorized by statute, but rather is impliedly prohibited by the congressional grant of the power to act as insurance agent in cities of *5,000 or less* population. Title 12 U.S.C.A. § 92."

And, further, the Court at page 804 stated:

"Thus, the Court is of the opinion that the defendant's attack on the plaintiffs' standing is without merit. Title 12 U.S.C.A. § 92 has the effect of protecting insurance agents from certain competition. Surely, the plaintiffs have the right to their day in court to show that protection afforded them by 12 U.S.C.A. § 92 had been violated."

Investment Company Institute et al. v. Camp, 1967, D.C.D.C., 274 F.Supp. 624, was a suit by an association which represented open-end investment companies, investment advisors and principal underwriters, and by some of its members for an injunction to restrain the Comptroller of the Currency from authorizing national banks to collectively invest funds tendered to them as managing agents solely for investment purposes. Plaintiffs alleged that such activities by national banks would constitute illegal competition to their detriment. In holding that the plaintiffs had standing to sue, the Court said at Page 636:

"* * * The statutes under which the regulation in issue was promulgated, were enacted to establish a clear Congressional policy which sought to separate national commercial banking from the securities business. The primary intent of Congress was to segregate these functions and to allow separate entities to engage in these business areas. This clarity of purpose is garnered not only from the Congressional hearings reports of the Glass-Steagall Act, but also from the exactitude with which Congress has delineated the areas of common interest in this financial structure. This strong general policy against the invasion of either field of endeavor by either entity is sufficient to postulate an interest upon which standing to challenge the regulation may be premised, cf. American Trucking Ass'ns, Inc. v. United States, 364 U.S. 1, 80 S.Ct. 1570, 4 L.Ed.2d 1527 (1960).

"Therefore, by implication, the plaintiffs here have a right to complain of the competition which is being condoned under the Regulation.

This competition is illegal in the sense that Congress has indicated its policy of separating the two financial institutions and this Regulation allows in an indirect manner a joinder of these interests. The plaintiffs were the recipients by implication of Congressional protection."

In granting the plaintiffs' motion for summary judgment on the merits, the Court held at Page 648:

"In view of the statements and conclusions made above, this court holds that the provisions of Regulation 9 which allow commingling of managing agency accounts do not comply with the statutory provision of the Glass-Steagall Act and are, therefore, illegal. The promulgation of these specific provisions allowing a commingling of managing agency accounts is also beyond the power of the Comptroller under Section 92a(a) of Title 12, and it is ordered to be set aside."

In support of its claim that the performance by the defendant bank of data processing services on its equipment for bank customers constitutes illegal competition with it and others who are similarly engaged in performing such services for the public at large, the plaintiff relies upon the provisions of 12 U.S.C. § 24 (par. Seventh), the provisions of the Bank Service Corporations Act, 12 U.S.C. §§ 1861–1865, and the congressional purpose that may be obtained from the legislative history of that Act.

12 U.S.C. § 24 (par. Seventh) provides that a national bank shall have the powers:

"To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; * * *."

Said Bank Service Corporations Act authorizes two or more banks subject to Federal supervision to invest limited funds in a bank service corporation for the purpose of providing bank services only for banks. Said Act defines bank services as:

"services such as check and deposit sorting and posting, computation and posting of interest and other credits and charges, preparation and mailing of checks, statements, notices and similar items or any other clerical, bookkeeping, accounting, statistical, or similar functions performed for a bank."

■ In my opinion the plaintiff has failed to establish that the provisions of paragraph Seventh of 12 U.S.C. § 24, which appeared in identical form in the National Bank Act of 1864, reflect a congressional purpose to protect the plaintiff from the competition which it seeks to enjoin in this action.

■ Similarly, I find that there has been no showing by the plaintiff that said Bank Service Corporations Act reflects a congressional purpose to protect the plaintiff and others engaged in performing data processing services for the public from the competition arising from the performance by national banks on their equipment of data processing services for other banks and their bank customers as a part of the business of banking and incidental thereto. Since said Act is by its express terms limited to Bank Service Corporations and their activities, it cannot be properly construed to apply to the activities of national banks generally.

Finding, as I do, that neither paragraph Seventh of 12 U.S.C. § 24 nor said Bank Service Corporations Act reflects a legislative purpose to protect the plaintiff against the competition of which it complains, it follows that the plaintiff lacks standing to maintain this action and this Court lacks jurisdiction over the subject matter thereof.

The defendants' motions to dismiss are granted.