Russell **TROUTMAN** et al., Appellants,

v.

Sargent **SHRIVER**, Director, Office of Economic Opportunity, and United States of America, Appellees.

No. 25539.

United States Court of Appeals Fifth Circuit.

Sept. 30, 1969.

J. Thomas Gurney, Heskin A. Whittaker, Orlando, Fla., Phillip H. Logan, Sanford, Fla., Stephen T. Dean, Orlando, Fla., Alexander D. Hall, Jr., St. Cloud, Fla., Philip G. Nourse, Fort Pierce, Fla., Brian C. Sanders, Russell Troutman, Alton G. Pitts, Orlando, Fla., of counsel.

Leonard Schaitman, Alan S. Rosenthal, John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Tampa, Fla., Edwin L. Weisl, Jr., Asst. Atty. Gen., Edward F. Boardman, U. S. Atty., John C. Eldridge, Leonard Schaitman, Attys., Dept. of Justice, Washington, D. C., for appellees.

Before THORNBERRY and SIMPSON, Circuit Judges, and SUTTLE, District Judge.

SIMPSON, Circuit Judge:

The determinative issue in this appeal is whether the appellants, as four county bar associations and a taxpayer-citizen-attorney, have standing to challenge the constitutionality of the Economic Opportunity Act of 1964, as amended, 78 Stat. 508, 42 U.S.C.A. § 2701 et seq., or alleged acts or omissions of the Director of the Office of Economic Opportunity regarding the establishment of legal aid service programs in their counties pursuant to the Act.

Appellant Russell Troutman by an amended complaint of January 10, 1967, alleged that Office of Economic Opportunity Legal Services Programs had been instituted in Dade, Volusia and St. Lucie Counties, Florida and that the Director of the Office of Economic Opportunity had plans for imminent institution of an OEO Legal Services Program in Orange County, Florida, where Troutman is a citizen, taxpayer and practicing attorney. The complaint further alleged that if an OEO Legal Services Program were instituted in Orange County, Troutman would be deprived of the privilege and obligation of providing legal services to those who could not otherwise obtain representation and that he would be forced to compete with OEO lawyers for a clientele who could afford to obtain representation by Troutman. The complaint prayed for declaratory and injunctive relief, asserting the invalidity and impropriety of the Economic Opportunity Act and the impropriety and lack of authority of the Director's involvement with the profession of law.

The four local bar associations [1] moved to intervene as plaintiffs in Troutman's suit, charging that the defendants were operating,[2] promoting or prospectively would operate [3] OEO Legal Services Programs in their respective counties. Generally the movants sought relief similar to that demanded by Troutman.

The Court below held that none of the appellants had standing to maintain the action. Without ruling upon the merits or other jurisdictional defenses interposed by the defendants, the district judge dismissed Troutman's amended complaint with prejudice and denied the motions to intervene. This appeal ensued. We affirm.

■■ In order to resolve the question whether appellants have standing to contest the validity and constitutionality of the Act or the actions of the Director, it must be determined whether they are proper persons to request an adjudication of issues raised by such action. "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." Flast v. Cohen, 1968, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947, 961. The status asserted by the person whose standing is challenged must be examined to ascertain whether there is a logical nexus between the status asserted and the claim sought to be adjudicated. Id. at 102, 88 S.Ct. 1942. It is the existence of a logical nexus which ensures that "the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " Id. at 99, 88 S.Ct. at 1952, quoting Baker v. Carr, 1962, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, 678.

■ The first status asserted by the appellants is that of federal taxpayer.

"The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. * * * Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged." Id. at 102, 88 S.Ct., at 1954.

"[I]n Flast v. Cohen, supra, * * * the [Supreme] Court then set out the requirements which must be met by the taxpayer before he has standing. Essentially they are:

1. that he is in fact a taxpayer;
2. that the tax dollars are being expended in the furtherance of specific government business;
3. that there is a substantial expenditure; and
4. that these expenditures exceed the limits imposed by the establishment clause of the first amendment on the taxing and spending powers in Article I."

Protestants and Other Americans, etc. v. Watson, D.C.Cir.1968, 407 F.2d 1264, 1265 (emphasis omitted).

It is important for our purposes that in Flast v. Cohen the majority pointed out that the *Flast* test of taxpayer standing is consistent with the result of the Court's prior decision in Frothingham v. Mellon, 1963, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, which ruled that a federal taxpayer is without standing to challenge the constitutionality of a federal statute. See Flast v. Cohen, supra, 392 U.S. at 104–105, 88 S.Ct. 942. The difference between *Flast* and *Frothingham* was that in the former the taxpayer attacked the statute on the ground of its inconsistency with a specific limitation upon the congressional taxing and spending power:

1. The Orange County Bar, Osceola County Bar Association, Seminole County Bar Association, and St. Lucie County Bar Association.

2. St. Lucie County.

3. The other three counties.

the Establishment Clause of the First Amendment, whereas in the latter the taxpayer's challenge was bottomed upon the general provisions of the Tenth Amendment and the Due Process Clause of the Fifth Amendment. "In essence, Mrs. Frothingham was attempting to assert the States' interest in their legislative prerogatives and not a federal taxpayer's interest in being free of taxing and spending in contravention of specific constitutional limitations imposed upon Congress' taxing and spending power." Flast v. Cohen, *supra* at 105, 88 S.Ct. at 1955.

█ The appellants have not coupled their attack, as taxpayers, upon the Economic Opportunity Act with any specific limitation upon Congress' taxing and spending power and thus have failed to "establish a nexus between that status and the precise nature of the constitutional infringement alleged." *Id.* at 102, 88 S.Ct. at 1954. Therefore they were without standing to challenge the Act. Frothingham v. Mellon, *supra.*[4]

██ The appellants' further claims of standing as citizens and attorneys must also fail. Exactly as with the status of taxpayer *qua* taxpayer, these claims of status have not been coupled with any assertion of direct injury in violation of specific constitutional limitations. "It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public." Ex parte Levitt, 1937, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed.

493. (citations omitted). See also Dade-Commonwealth Title Ins. Co. v. North Dade Bar Ass'n, Fla.1963, 153 So.2d 723, 726–727.

█ Neither do appellants have standing to challenge the Act or the actions of the Director because of their position as competitors, because they do not have the type of interest required to confer standing to challenge the Act in the status of competitors.

In Florida, attorneys enjoy no protections from competition by those qualified to engage in legal services. Restricting the practice of law to those who have been examined and found qualified "is not done to aid or protect the members of the legal profession either in creating or maintaining a monopoly or closed shop. It is done to protect the public from being advised and represented in legal matters by unqualified persons * * *." State ex rel. Florida Bar v. Sperry, Fla.1962, 140 So.2d 587, 595, rev'd on other grounds, 1963, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428.

The decisions of the courts appear to be uniform in denying standing to competitors who otherwise possess no legal right to be free from competition. See Tennessee Power Co. v. T.V.A., 306 U.S. 118, 137, 59 S.Ct. 423, 83 L.Ed. 543, 549 (1939); Rural Electrification Admin. v. Central La. Elec. Co., 5 Cir. 1966, 354 F.2d 859, cert. denied 358 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54 (1966). These appellants lack such a legal right and hence lack standing.

The recent 8th Circuit case of Association of Data Processing Service Organizations, Inc. v. Camp, 8 Cir. 1969, 406 F.2d 837, cert. granted 395 U.S. 976, 89 S.Ct. 2128, 23 L.Ed.2d 764 (June 23, 1969), sets forth a clear summation of

---

4. We have not overlooked our decision in Saxon, Comptroller of the Currency, etc. v. Georgia Assn. of Independent Insurance Agents, Inc. et al., 5 Cir. 1968, 399 F.2d 1010. Since that case involved the the Comptroller's approval by regulation of competition made expressly unlawful by statute, it is inapposite. As we held there, the insurance agents had a "statutory aid to standing", op. cit. at 1018, in addition to their legal right to protect themselves from unlawful competition. There was thus presented in that case a dispute in the necessary concrete adversary context. *Flast*, supra. See the further explication in Judge Thornberry's specially concurring opinion in *Saxon*, op. cit. at 1019–1021.

the holdings of prior cases as to the legal interest required for standing to sue as a competitor:

"In summary, a plaintiff may challenge alleged illegal competition when as complainant it pursues (1) a legal interest by reason of public charter or contract, Frost v. Corporation Comm'n, supra [278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483] (2) a legal interest by reason of statutory protection, Baker, Watts & Co. v. Saxon, supra, or (3) a 'public interest' in which Congress has recognized the need for review of administrative action and plaintiff is significantly involved to have standing to represent the public, FCC v. Sanders Bros. Radio Station, supra. From this analysis, it seems clear that an allegation of 'illegal competition' is not the balancing determinant of a plaintiff's standing. The primary search must rest on whether the plaintiff's status is one which enjoys a private interest entitled to protection or is one which the law recognizes to be of such legal significance to allow a party to act as a public representative for a public interest."

▆ Appellants earnestly argue that the Act itself confers standing upon them by virtue of the "Ichord Amendment", section 222(a) (3) of the Act, 42 U.S.C.A. § 2809 (a) (3).[5] It is urged that, while the amendment does not expressly confer standing upon attorneys or bar associations as "aggrieved persons", see, e. g., Scripps-Howard Radio, Inc. v. F.C.C., 1942, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229; F.C.C. v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869; it created a right of local bar associations to be consulted prior to approval or funding of legal services programs and by implication confers standing to contest the Director's actions. We disagree.[6]

The Ichord Amendment as originally passed in 1966 provided that the Director was to consult with the local bar associations, but it was made clear at the time by the sponsor of the amendment that it was not intended to give the local bar associations any form of veto over proposed programs but rather was for the purpose of giving them an opportunity to present suggestions and recommendations as to the proposed programs. See 112 Cong.Rec. 24437 (Sept. 29, 1966).[7] The provision as originally enacted was amended in 1967 to provide the State bar associations an opportunity to make comments and recommendations regarding proposed projects, but the amendment was explained as being for the purpose of providing more helpful assistance to the Director due to the broader base and typically better staff assistance which State bar associations

5. The Ichord Amendment reads as follows:
   "The Director shall make arrangements under which the State bar association and the principal local bar associations in the community to be served by any proposed project authorized by this paragraph shall be consulted and afforded an adequate opportunity to submit, to the Director, comments and recommendations on the proposed project before such project is approved or funded, and to submit, to the Director, comments and recommendations on the operations of such project, if approved and funded." 42 U.S.C.A. § 2809(a) (3).

6. Appellants contend that the amendment was violated as to Orange and St. Lucie Counties. The pleadings assert that there was an O.E.O. Legal Service chartered and about to start operations in Orange County, while in St. Lucie County the O.E.O. Legal Services Program was already in operation. The O.E.O. was then promoting programs in Osceola and Seminole, the other two counties whose bar associations sought leave to intervene.

7. Mr. Ichord: " * * * this does not give the local bar associations a veto over the proposed programs but merely gives the various bar associations the opportunity to present suggestions and recommendations thereon." 112 Cong.Rec. 24437 (Sept. 29, 1966).

can provide. See 113 Cong.Rec.No. 154, S13856 (Sept. 28, 1967).[8]

 We are unpersuaded that the Ichord Amendment confers standing upon appellants because we perceive no legislative purpose in that amendment to protect a competitive interest of appellants. There are times when competitors are given standing by Congress to challenge competition which allegedly is in violation of a statute where the statute itself is said to be enacted for the express protection of the class of competitor complaining. In order to fall within this classification, however, the particular statutory provision invoked must reflect a legislative purpose to protect a competitive interest, Hardin v. Kentucky Util. Co., 380 U.S. 1, 5–6, 88 S.Ct. 651, 19 L.Ed.2d 787, 792 (1968). But where, as here, the purpose of the statutory provision is simply to benefit the public at large by easing the task of administration of the statute, no right, nor legal standing, is conferred.

Appellants' reliance upon Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681, is misplaced. *Abbott* involved an essentially *regulatory* statute requiring the petitioners to make significant changes in their everyday business practices, *id.* at 154, 87 S.Ct. 1507, including the possible destruction of existing property rights, *id.* at 152, 87 S.Ct. 1507, or possible criminal sanctions for noncompliance, *id.* at 154, 87 S.Ct. 1507. Thus the Government there acted not as a competitor but as a regulator interfering with legally recognized rights. Where legally recognized rights such as the use or enjoyment of property are sought to be protected by imposition of a consultation requirement as a condition precedent to agency action, the individuals affected by agency noncompliance with the condition, or organizations representing their interests, may have standing to contest the action by virtue of the condition. See Citizens Ass'n. v. Simonson, 1968, 131 U.S.App.D.C. 152, 403 F.2d 175. Appellants, however, have demonstrated no legal rights sought to be protected by Congress, there ordinarily being no right to be free from competition and the statute having been passed for the benefit of the public at large.

Affirmed.

---

8. Senator Cooper explained the 1967 amendment which he introduced, as follows:

"The present language of the bill provides that in the provision of legal services to the poor, the director shall make arrangements with the principal bar associations in the area. My amendment provides that, in addi-

tion, they shall seek the advice and comments of the State bar association. I believe that State bar associations are more broadly based, and they usually have a staff which is better able to provide helpful assistance." 113 Cong.Rec. #154, S13856 Sept. 28, 1967).